August 12, 2005

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MUSCLETECH RESEARCH AND DEVELOPMENT INC
AND SN WAREHOUSING INC

    PLAINTIFFS

Vs                 Civil Action No OO CV 0753(A)(F)

EAST COAST INGREDIENTS, et al

    DEFENDANTS

### Memorandum of Law in Opposition to the Plaintiff's motion for summary judgment against defendants Obukuro and Mosur awarding damages on counts I, II, and III of the second amended complaint and thereby requesting a trial.

  PLEASE TAKE NOTE, that the defendant, Derek Obukuro hereby move this court before the honorable Richard Arcara, Chief United States District Court Judge, at the United States Courthouse, Part II, 6th Floor, 68 Court Street, Buffalo New York, respectfully submit this memorandum of law in opposition to the plaintiff's, Muscletech Research and Development (collectively referred to as "MT) motion for summary judgment against defendants Obukuro and Mosur awarding damages on counts I, II, and III of the second amended complaint and thereby request a trial.

### Summary of Arguments

The Plaintiff's can not prevail in their motion for summary judgment against defendants Obukuro and Mosur awarding damages on counts I, II, and III of the second amended complaint because there are disputed facts which need to be resolved at trial. First, regarding the report prepared by Albert E Parziale, we have multiple disputes regarding his calculations of damages. This disputed report is the basis of their entire damages claim. Secondly, three of the five products involved in the counterfeiting claim are banned by the FDA due to safety concern and one of the products has been linked to several deaths in the United States. These three products are no longer manufactured by MT. Third, MT has clearly violated several of the FTC guidelines and has been deceiving the public for many years. Fourth, MT has used employees with no science laboratory qualifications or training in their advertisements. These employee where depicted in fake lab environments and the advertisements claimed these "researchers" were responsible for testing products.

                Motion

1. I would like to address the expert report from Albert E. Parziale. When the report was submitted, I was unable to respond to the report due to the fact that I was pleading my Fifth Amendment rights based on the criminal aspect of the same case. My attorney advised me that I could not respond to the report because this would put my Fifth Amendment rights in jeopardy. I would like to take the time to respond, before the court decides on the accuracy and validity of the report.

   i. In the report, Albert states the following information on page 5.

| Invoices from M Olympus to Super Natural | $745,367.14 |
|---|---|
| East Coast invoices billed to DK Invest | $604,843.40 |
| East Coast invoices shipped to Health Fitness | $55,025 |
| Sho Me Natural Products invoices billed to East Coast | $622,810.35 |
| East Coast purchase order – does not state if the order was completed | $170,457.50 |
| East Coast Invoices billed to ATF | $119,523 |
| M. Olympus Invoices sold to Fitness and Nutrition | $177,031.66 |
| Sho Me Natural Products billed to East Coast Ingredients (packing slips) | $87,597 |
| Total | $2,582,664.96 |
| | |

Based on the above report I would like to address some questions that will need to be answered in a trial.
1. The report can not simply add up the total dollar value of invoices unsubstantiated with corresponding bank records and attribute everything to myself and Mr. Mosur as fact. The only agreed amounts from our position are those based on subpoenaed information from Key bank. I do not argue the baseline invoice numbers provided by the plaintiff regarding product sold to Super Natural and Fitness and Nutrition. I do however have dispute with the damage amount the Plaintiff makes as vastly inflated. The total amount of sales to these two distributors is indicated as $745,367.14 plus $177,031.66 totaling $922,398.80. As these were sold by myself and Mr. Mosur at 10% below the distributor wholesale price that would have been charged by MT the amount should be increased to $1,024,887.50. Based on the experts testimony the total lost profit at a maximum would be $722,545.68. However, for the following reasons it is my position that the amount should be far less than this amount.

Firstly, based on the fact that Hydroxycut, Nortesten and Anotesten are now banned products and MT has paid damages to others including the state of Missouri based on the sale of some or all of these so called "legitimate" products I feel that only sales of Acetabolan and Cell-tech should be applicable to the damage calculation. Therefore, based again on the invoices from provided regarding Super Natural and Fitness and Nutrition the total lost profit to MT would be stated s follows:

Total sale of Cell-Tech and Acetabolan $169,873.66
Divided by 90% to account for the 10% reduction we charged equals $188,748.51
$188,748.51 multiplied by 70.5% gross profit = $133,067.69.

As myself and Kent Mosur made an agreement with the Federal Court to pay back MT in the amount of $210,000 at the sentencing this amount should be considered "recovered lost gross profit" and therefore subtracted from any damages. As the balance is negative, $133,067.69-$210,000 I feel the damages have been satisfied and that a trial would indicate this outcome.

2. I feel that invoices from Sho Me Natural Products to East Coast ingredients in the amount of $622,810.35 are likely product costs and are not attributable to the damage calculation. For example, if Mr. Mosur and I had made counterfeit hamburgers, the cost of meat and buns should not be added to the final sale price to the end consumer for the purpose of calculating lost profit by a "legitimate" owner of a burger patent.

An example of the plaintiff argument in fast food terms is outlined below:

| | |
|---|---|
| Cost of meat | $0.60 |
| Cost of bun | $0.30 |
| Cost of condiments | $0.10 |
| Sold to consumer for | $1.95 |

The report would calculate the lost profit per burger to total $2.95 but you can see how this calculation can not make sense. Instead the loss profit should be calculated by $1.95/90%=$2.16 x 70.5% = $1.53.

This is also revenue that M. Olympus did not receive and MT may have received this money when they settled with the defendant Sho Me Natural Products. Please see docket 489, which pertains to the settlement with Sho Me Natural Products.

3. I feel that Albert E. Parziale should not include purchase orders since there is no evidence that the product was ever made or in fact sold. The court can not infer the purchase order as sold product to the public and therefore the court can not assume the product was ever made and/or sold.

$170,457.50

4. I feel that Albert E. Parziale should not include packing slips as legitimate sales receipts since there is no confirmation that the product ever arrived at its destination and therefore there is no guarantee that the product was ever sold.

$87,597

The court can not accept the above number as sold product to the public. A packing slip simply states that a product has been made but does not mean it has been shipped or arrived at it destination. These packing slips have not been signed or dated to indicate that they have arrived and also there is not evidence that indicates the MT products were sold to the public.

2. I agree that the plaintiff's own the trademarks for the products Hydroxycut, Anotesten, Cell-Tech, Acetabolan II, Nortesten. Of the 5 listed Muscletech products, three of these are no longer on the market and have not been sold since early 2004. They have been banned by the FDA because of their safety concerns. Human Health Services of the FDA has stated, by Secretary Tommy G Thompson on products containing androstenedione and androstenedione derivatives (exhibit 1).

**"Young people, athletes and other consumers should steer clear of andro because there are serious, substantial concerns about its safety"**

The above statement applies to both Muscletech (MT) products Anotesten and Nortesten. MT is currently involved in a civil lawsuit in the state of Florida involving Anotesten and Nortesten. The plaintiff's co-counsel in the civil lawsuit, Vincent Lynch states "We believe the makers and the sellers of andro are caught in a catch-22", "If Andro works, they are criminally liable, and if andro doesn't work, they are liable for civil damages". The article (exhibit 2) also states that several studies have shown that andro does not lead to higher testosterone levels or increased muscle growth when used accordingly to the label directions.

FDA has also banned the use of ephedra Hydroxycut and they have
Release the following statement"

**"The FDA rule reflects what the scientific evidence shows – that ephedra poses an unreasonable risk to those who use it." Health and Human Services Tommy G Thompson said, "The regulations prohibit the sale of dietary supplements containing ephedra, and we intend to take swift action against anyone who puts consumers at risk by continuing to sell such products after the prohibition takes place"**

This safety concern has also been documented whereby MT has admitted guilt and settled with the state of Missouri for $100,000. In the civil law suit (MT vs. the State of Missouri, see attached court document, exhibit 4,5,6) MT were charged with several offenses related to the sale and advertising of Hydroxucut. Here is an example of one of the infractions:

"16. Muscletech used deception, misrepresentation, unfair practice and/or the concealment, suppression, or omission of material in fact in connection with the sale and advertisement of Muscletech in regard to Hydroxycut's safety – or lack of safety- including but not limited to the following:"

The following court document outlines MT blatant disregard for the public safety and the law itself. Some examples of their deception are during one of their studies at patient was rushed to the hospital because of atrial fibrillation and this subject was not mentioned as an adverse event, and secondly, a study commission by them showed no statistical weight loss that was greater than placebo.

I can not believe that the court would allow MT to claim damages for banned products by the FDA that have also failed to demonstrate any efficacy vs. placebo. This further provides evidence of the criminal environment that was fostered by the owner Paul Gardiner and flowed downwards to the employees.

3. Based on the above information, I feel that a trial will best serve to determine if banned products that are no longer sold to the public because of safety concerns causing death can be used in the calculation of damages. Ephedra Hydroxycut, Nortesten and Anotesten are no longer allowed to be manufactured by the plaintiffs.

4. I would like a trial to have the jury fully understand the criminal working environment where I was employed. I would like to share with the court some facts about the plaintiff that will judge the creditability of the plaintiff. As the court can see, MT has already admitted guilt to selling products that are unsafe with deceptive advertising. I have submitted several advertising articles from the plaintiffs for Hydroxycut, Anotesten and Nortesten. These articles are written by factious authors, reveal pictures of people the plaintiffs claim are researchers, brand claims that are not substantiated with any scientific evidence, and in fact the owner who created the first three MT products has no scientific background and no post secondary degree and performed no clinical trials before selling the products.

   a. The plaintiffs use factious authors in their articles (exhibit 7) to ensure that loyal readers to the body building magazines would not see the same author promoting MuscleTech product all the time. The editorial style advertising was used to trick the buying public into thinking that a writer from the magazine was reporting using their own personal opinion about a topic. The plaintiffs should have clearly stated at the beginning of all their advertising articles or somewhere in bold print that this is a paid promotion and is not the opinion of the magazine. **The FTC has a truth-in-advertising law that follow 2 simple guidelines**

      i. advertising must be truthful and not misleading
      ii. before disseminating an ad, advertisers must have adequate substantiation for all objective product claims

EXAMPLE
~~Exhibit~~ 1.

As the court can see from the enormous title, the consumer is lead to believe that they are getting 168% MORE TESTOSTERONE (exhibit 8). MT claims that the consumer is receiving a MT product that is 3 times more powerful

than androstenedione. MT has a large graph that indicating their higher levels of testosterone verse regular androstenedione. What MT fails to report to the consumer is that the study was performed in-vitro (test tube) and not in humans. Also MT did not perform a study of their own to substantiate their claims; they just simply manipulated the numbers by increasing the dosages of the ingredients from the first version and used a time released capsule.

The FTC clearly states the advertisers must clearly substantiate all claims. Using a 28 year old study completed in-vitro with no clinical study completed on their branded products clearly demonstrated misinformation from MT and deceiving the public.

EXAMPLE
~~Exhibit~~ 2

Another advertisement from MT clearly reveals a picture of a huge body builder calling their products Anotesten and Acetabolan the Anabolic stack (exhibit 9). They exhibit a graph in the middle of the article demonstrating a long release over a period of time. There is no scientific reference proving their prolonged release just their expressed opinions. Once again, MT makes substantiated claims without any scientific references. This argument is further substantiated by the fact that MT is involved in a law suit in the state of Florida to determine whether their products are in fact criminally illegal or civilly liable for false misrepresentation of the efficacy of the product

EXAMPLE
~~Exhibit~~ #3

MT claim in the article (exhibit 10) "While Hydroxycut works best when used in conjunction with diet and exercise, many people have written to MuscleTech expressing their delight at pounds of fat they have lost *without doing any exercise or dieting at all!*" This is hard to believe that you can use a product and lose weight without dieting or exercising. MT also fails to show any testimonials of person(s) losing weight without diet and exercise. MT also mentions in the article the safety of the product stating "Hydroxycut – The Safe Fat-Burning Alternative" MT clearly claims that Hydroxycut is a safe product but the FTC clearly state:

**"Similarly, advertising that makes either an expressed or implied safety representation should include information about any safety risks"**

Nowhere in the article are any safety risks mentioned and we can now see from several deaths related to ephedra, the result of such companies using products that have not gone through extensive human clinical trials before the product is approved on the market. As mentioned earlier, the FDA has now banned the use of dietary supplements containing any form of ephedra. Clearly MT should have mentioned in their article about the inherent risks associated with using dietary supplements containing any form of ephedra, but they only mention the positive benefits with no concern about public safety. Once again I think the above mentioned arguments are legitimized by the admission of guilt by MT in said law suit in the state of Missouri.

EXAMPLE
~~Exhibit~~ #4

"What are the Best Creatine Supplements?" by Ian O' Grady (exhibit 7). This advertisement is made to look like an editorial report from the magazine listing MT's direct opinion of what are the best creatine supplements in the market place. Ian O'Grady is a fictitious author created by MT. The ad is setup to look like part of the magazine in terms of style, use of pictures, colour and letter type and is 6 pages in length. This is very different from most paid advertisements. I feel that this clearly falls under the FTC policy on Deception (exhibit 12, 13) and they deem this unlawful.

"Section 12 specifically prohibits false ads likely to induce the purchase of food, drugs, devices, or cosmetics. Section 15 defines false ads for the purposes of Section 12 as one which is "misleading in a material respect"

No where does the 6 page paid advertisement state that the article is a Muscletech advertisement. The advertisement rates all the creatine supplements in the marketplace and lucky enough the Muscletech product Cell-tech gets a 5 star rating.

EXAMPLE
~~Exhibit~~ #5

The ad clearly states that MT use researchers for their products yet they have a pictures of employees using scientific equipment who are not researchers. The reason, I am aware of this is the fact that I am in one of the pictures. The owner of MT, Paul Gardiner thought the advertisement would be more creditable with a picture of an oriental person wearing a lab coat. Another example of MT deceiving the public (exhibit 11). In fact the owner Paul Gardiner is in the picture posing as a researcher.

Based on the above exhibits, MT clearly deceive the public and have been unlawful deemed by the rules of the FTC and FDA. I believe a jury should decide the creditability of the plaintiffs to truly understand the environment I was working under. The criminal charge of trademark infringement was not created out of thin air but was a result of learning the internal workings of Muscletech and its owner. The entire idea of counterfeiting MuscleTech product was directly related to the working environment and expectations of criminal activity fostered at MuscleTech. Until I started working at MT, I had no criminal record.

Regarding attorney fees:

In the court docket 487 it is stated the plaintiff's will provide details of the attorneys fees apportionment in the request for summary judgment on damages. No such apportionment was found in our copy of the summary judgment motion for damages provided by the plaintiff. Surely they should not be given any such award prior to submitting an apportionment breakdown for all defendants. Regardless it is our argument the plaintiffs are not entitled to recover attorney fees whatsoever. This is also a matter for a trial to decide.

## IN CONCLUSION

The plaintiff indicates a vastly trumped up damage amount that is nowhere near the true amount of damages suffered based on my calculations using the same evidence in the correct context coupled with common sense accounting principles. Rather than adding up every number under the sun and tripling the value I believe the argument I present is soundly based on the actual facts in this case. Terry Beggley stated in a deposition that, (I paraphrase) "we will spend $10 to recover $1.00 in this case. This statement clearly sends a message that MuscleTech is motivated by anger and revenge for a wrongdoing against them and would claim a trillion dollars in damages if remotely possible. I argue the damages should be based on facts and should not include liabilities stated as assets as the plaintiff's have done.

I feel that a trial will best serve the court to obtain a clearer picture of the inner workings of MT and help understand why I went from a clean criminal record to where I am presently. I would like the court to take into consideration the past background of the plaintiff before awarding of any damages. I feel that enough evidence has been provided to show that a trial is warranted. A trial will allow a jury to decide a fair assessment of damages based on the facts presented.

Respectfully submitted,

Derek Obukuro
(905)789-6210
(905)792-3271 - fax


I, Kent Mosur have read the above material and wish to submit these arguments against a summary judgment as well.


Kent Mosur

cc.   Howard Shire Kenyon & Kenyon
      Greg Paradise Kenyon & Kenyon