UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MUSCLETECH RESEARCH AND
 DEVELOPMENT, INC., and                                      **REPORT**
SN WAREHOUSING, INC.,                                         **and**
                                                      **RECOMMENDATION**

                        v.
                                          Plaintiffs,         **00-CV-753A(F)**

EAST COAST INGREDIENTS, LLC,
SCOTT KNOX, THEODORE C. SOSANGELIS,
SHO ME NATURAL PRODUCTS, INC.,
THEODORE C. IRVING, DEREK OBUKURO,
KENT MOSUR, ROBERT LEMMA,
JAMES BARMANN, ATF FITNESS PRODUCTS,
INC., JAMES G. VERCELOTTI, SUPERNATURAL
DISTRIBUTORS, INC.,  BRANDYWINE
LOGISTICS, INC., THE SUPPLEMENT SHACK,
NUTRITION INVESTMENTS, doing business as
Health & Fitness, KAMAL SHAHAM, also known as
Cal Shaham, and PETER KLEIN,

                                       Defendants.[1]
_____


APPEARANCES:              KENYON & KENYON
                          Attorneys for Plaintiffs
                          HOWARD J. SHIRE, and
                          GREGG A. PARADISE, of Counsel
                          One Broadway
                          New York, New York 10004

_____

[1] Defendants Sho Me Natural Products, Inc., Christopher K. Reckner, Theodore Irving, Theodore
Sosangelis, Robert Lemma, East Coast Ingredients, LLC and Scott Knox have consented to the entry of
final judgment and permanent injunction and the action has been discontinued as to them.  Doc. Nos. 489
(Sho Me Natural Products, Inc., Reckner and Irving), 492, filed July 15, 2005 (Sosangelis), 499, filed July
27, 2005 (Lemma), and 502, filed August 15, 2005 (East Coast Ingredients and Knox).  As such, the
action continues only against Defendants Derek Obukuro, Kent Mosur and James Barmann.  Further,
James Barmann has never appeared in this action and, on November 6, 2000, Default Judgment was
entered against him (Doc. No. 79).

PHILLIPS LYTLE LLP
Attorneys for Plaintiffs
JEREMIAH J. McCARTHY, of Counsel
3400 HSBC Center
Buffalo, New York 14203-2887

DEREK OBUKURO, *Pro Se*
Defendant
16 Marbleseed Crescent
Bampton, Ontario, Canada LGR 257

KENT MOSUR, *Pro Se*
272 Cresthaven Road
Brampton, Ontario, Canada  L7A 1K8

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on February 12, 2001.[2]  The matter is presently before the court on Plaintiffs' motion for partial summary judgment against Defendants Obukuro and Mosur, filed July 15, 2005 (Doc. No. 493).

## BACKGROUND and FACTS[3]

Plaintiffs MuscleTech Research and Development, Inc. ("MuscleTech") and SN Warehousing, Inc. ("the Warehouse") (together, "Plaintiffs") commenced this action on August 28, 2000, (Doc. No.1), and filed a Second Amended Complaint on January 29,

---

[2] Chief Judge Arcara originally referred this action to the undersigned on February 12, 2001. (Doc. No. 101).  On May 30, 2001, the action was temporarily referred to Magistrate Judge Hugh B. Scott when physical illness prevented the undersigned from performing his duties. (Doc. No. 138).  On October 4, 2001, Honorable David G. Larimer again referred the matter to the undersigned upon his return to duty. (Doc. No. 166).

[3] The Facts statement is taken from the pleadings and motion papers filed in this action.

2002 (Doc. No. 98),[4] alleging, as relevant to the instant motion, trademark and trade name infringement and counterfeiting in violation of 15 U.S.C. §1114 *et seq.* ("First Cause of Action"), false designation of origin and false representation in violation of 15 U.S.C. §1125(a) ("Second Cause of Action") and copyright infringement in violation of 17 U.S.C. §101 *et seq.* ("Third Cause of Action").[5]   Plaintiff MuscleTech ("MuscleTech") is a producer of sports nutrition supplements whose products were counterfeited and sold under the MuscleTech label.  Defendants Derek Obukuro ("Obukuro") and Kent Mosur ("Mosur") (together, "Defendants"), former MuscleTech employees, played integral roles in the counterfeiting scheme.  Essentially, Plaintiffs claim that Defendants helped create fake MuscleTech products using the same packaging, but not the same contents, as authentic MuscleTech products.  In furtherance of the counterfeiting scheme, Obukuro stole MuscleTech's computer files containing copies of MuscleTech's distinctive copyrighted labels, as well as MuscleTech UPC bar codes and lot numbers, so as to create products bearing labels that were virtually indistinguishable from genuine MuscleTech products.  Obukuro also provided MuscleTech's trade secret

---

[4] The Second Amended Complaint added as Defendants ATF Fitness Products, Inc., James G. Vercelotti, Super Natural Distributors, Inc., Brandywine Logistics, Inc., The Supplement Shack, Nutrition Investments, Kamal Shaham and Peter Klein.  All such Defendants, with the exception of Klein, have since been dismissed from this action, either by consenting to the entry of final judgment and permanent injunction,  Doc. Nos. 284, filed May 31, 2002 (ATF Fitness and Vercelotti), and 477, filed March 7, 2005 (The Supplement Shack, Nutrition Investments, Kamal Shaham), by voluntary dismissal, Doc. No. 156 filed August 13, 2001 (Brandywine Logistics), or by stipulation and order of dismissal, Doc. No. 443, filed March 31, 2004 (Super Natural Distributors).

[5] Plaintiffs' additional causes of action, Claims IV through IX, alleging civil RICO violations, conversion, common law trademark and copyright infringement, and state law claims for consumer fraud, trademark infringement and unfair competition, are not subject to this motion.  Further, in connection with the instant motion, Plaintiffs note that in light of the court's finding of liability against Defendants Obukuro and Mosur on the First, Second and Third Causes of Action, Plaintiffs do not intend to pursue their remaining claims against Defendants Obukuro and Mosur, Plaintiff's Memorandum (Doc. No. 496) at 1 n. 2, and indicate that with regard to Klein, Plaintiffs are withdrawing all claims for monetary damages and seek only  injunctive relief against Klein.  *Id.* at 1 n. 1.

product formulations to Sho Me Natural Products, Inc. ("Sho Me"), who then manufactured the counterfeit products.  Sho Me, however, did not follow the proper formulations for authentic MuscleTech products, resulting in ineffective products that, in turn, caused MuscleTech to lose customers.

Obukuro rented warehouse space in Cheektowaga, New York, in this district, thereby allowing the counterfeit products to be shipped to distributors from the same distinctively named town as the genuine MuscleTech products.  Defendant Mosur cooperated with Obukuro in establishing a joint bank account for receiving and transmitting funds derived from the sale and distribution of the counterfeit products.

Defendants, in their answer filed March 2, 2001 (Doc. No. 112) ("Answer"), refused to respond to any allegations of the Complaint to avoid incriminating themselves.  Answer ¶ 1.[6]  On March 29, 2002, Plaintiffs moved for judgment on the pleadings or, alternatively, for partial summary judgment on the First, Second and Third Causes of Action.  (Doc. No. 244).  By Order filed October 10, 2002 (Doc. No. 346) ("October 10, 2002 Order"), Chief District Judge Arcara adopted the undersigned's August 8, 2002, Report and Recommendation (Doc. No. 335) (August 8, 2002 Report and Recommendation") recommending granting Plaintiff's motion for judgment on the pleadings and finding Defendants liable on the First, Second and Third Causes of Action, although any award of damages was to await final judgment as to all Defendants.  On January 23, 2004, both Defendants pleaded guilty in U.S. District

---

[6] When their answer to the Complaint was filed, Defendants were represented by Hodgson, Russ, Andrews, Wood & Goodyear, LLP, the name of which was later changed to "Hodgson Russ, LLP" ("Hodgson Russ").  By order filed April 17, 2002, Hodgson Russ was permitted to withdraw as Defendants' legal counsel.  (Doc. No. 251).  Since then, Defendants have proceeded in this action *pro se*.

Court in Connecticut to two federal felony charges of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320.

On July 15, 2005, Plaintiffs filed the instant motion (Doc. No. 494) ("the motion") seeking summary judgment against Defendants for an award of damages on the First, Second and Third Causes of Action.  The motion was supported by the attached Declaration of Howard J. Shire, Esq. ("Shire Declaration") with Exhibits A through G ("Plaintiffs' Exh(s). __"), MuscleTech's Local Rule 56 Statement (Doc. No. 495) ("Plaintiffs' Fact Statement"), and a Memorandum of Law (Doc. No. 496) ("Plaintiffs' Memorandum").  In opposition, Defendants filed on August 12, 2005, a Memorandum of Law (Doc. No. 501) ("Defendants' Memorandum"), with attached Exhibits A through M ("Defendants' Exh(s). __").  On September 16, 2005, Plaintiffs submitted a Reply Brief in Further Support of Summary Judgment (Doc. No. 507) ("Plaintiffs' Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiffs' motion for summary judgment should be GRANTED.

## DISCUSSION

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The court is required to construe the evidence in the light most favorable to the non-moving

party.  *Tenenbaum v. Williams*, 193 F.3d 58, 59 (2d Cir. 1999) (citing *Anderson, supra*, 477 U.S. at 255).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex, supra*, 477 U.S. at 322; *see Anderson*, *supra*, at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  In assessing a record to determine whether there is genuine issue of material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought.  *Rattner*, *supra*, 930 F.2d at 209.

   "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 323-24 (1986) (quoting Fed. R. Civ. P. 56).  Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case."  *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  Once a party moving for summary

judgment has made a properly supported showing as to the absence of any genuine

issue as to all material facts, the nonmoving party must, to defeat summary judgment,

come forward with evidence that would be sufficient to support a jury verdict in its favor.

*Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Although a summary judgment motion may be made with or without supporting

affidavits, if affidavits are submitted, they "shall be made on personal knowledge, shall

set forth such facts as would be admissible in evidence, and shall show affirmatively

that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P.

56(a).  Rule 56 further provides that

> [w]hen a motion for summary judgment is made and supported as provided in
> this rule, an adverse party may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse party's response, by affidavits or
> as otherwise provided in this rule, must set forth specific facts showing that there
> is a genuine issue for trial.

Fed. R. Civ. P. 56(e).

"However, if the motion for summary judgment is not made and supported as provided

in Rule 56, the Rule does not impose on the party opposing summary judgment an

obligation to come forward with affidavits or other admissible evidence of his own."  *St.*

*Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (reversing granting of summary

judgment in favor of defendant because defendant failed to allege factual basis for

assertions contained in defendant's affidavit such that plaintiff, as the party opposing

summary judgment, was not required to adduce evidence to defeat summary judgment

and the "self-serving" nature of plaintiff's affidavit statements went to the weight of the

statements, rather than to their admissibility).

Here, in seeking summary judgment on their First, Second and Third Causes of

Action, Plaintiffs allege they are entitled to damages for copyright and trademark

infringement.  Plaintiffs' Memorandum at 8.  According to Plaintiffs, MuscleTech's

damages are properly measured as its lost profits, which are calculated based on the

quantity of counterfeited products Defendants sold, and the profits Plaintiffs would have

realized on the sale of the same quantity of genuine MuscleTech products.  *Id*. at 8-9.

In support of their argument, Plaintiffs submit a report prepared by Albert E. Parziale

("Parziale"), a forensic accountant, who has been retained by Plaintiffs' counsel Kenyon

& Kenyon as an expert to provide financial expertise and analysis as to the damages

Plaintiffs suffered as a result of Defendants' counterfeiting activities. *Id*. at 9

(referencing Report of Albert E. Parziale ("Plaintiffs' Expert Report"), Plaintiffs' Exh. E).

In opposition to summary judgment, Defendants do not challenge Parziale's

qualifications as an expert; rather, Defendants assert that (1) insofar as Parziale

calculated Plaintiffs' damages by adding the amounts invoiced to East Coast, the

resulting sum is, incorrectly, wholly attributed to counterfeit sales by Obukuro and

Mosur, Defendants' Memorandum at 1-4; (2) Parziale erroneously included in his

damages calculation the sales of three of the five products involved in the counterfeiting

scheme that have been banned by the FDA as unsafe, *id.* at 4-5; (3) MuscleTech has

violated several Federal Trade Commission ("FTC") guidelines against deceptive

advertising, *id*. at 5; and (4) MuscleTech employed people with no scientific or

laboratory qualifications or training in their advertisements, *id.* at 5-7.  Defendants

further maintain that the amount of damages should be reduced by $ 210,000, the

amount of restitution Defendants were ordered to pay in connection with their January

23, 2004 guilty pleas to the federal criminal counterfeiting charges in United States

District Court in Connecticut.  Defendants' Memorandum at 3.  In further support of summary judgment, Plaintiffs contend that despite proffering several arguments in opposition to summary judgment, Defendants have failed to raise any genuine issue of material fact to avoid summary judgment.  Plaintiffs' Reply at 1-2.

As stated, Defendants have already been found liable on the First, Second and Third Causes of Action, October 10, 2002 Order at 2, and, as such, only the issue of damages remains.  Damages for willful copyright and trademark infringement may be awarded on summary judgment.  *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (affirming district court's grant of summary judgment to Plaintiffs as to damages award in trademark infringement action); *Update Art, Inc. v. Modiin Publishing Ltd.*, 843 F.2d 67, 72 (2d Cir. 1988) (same in context of copyright infringement action).

Plaintiffs are entitled to recover the actual damages suffered as a result of Defendants' trademark violations and copyright infringement.  15 U.S.C. § 1117(a) (trademark violations); 17 U.S.C. § 504(b) (copyright infringement).  Plaintiffs are permitted to recover as damages for trademark violations "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).  Further, damages permitted for a trademark violation may be trebled where the violation included willful use of a counterfeit mark.  15 U.S.C. § 1117(b).  Specifically,

> In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation . . . that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark . .

. , in connection with the sale, offering for sale, or distribution of goods or services.

15 U.S.C. § 1117(b).

Plaintiffs may recover as damages for copyright infringement either "actual damages and any additional profits of the infringer" or "statutory damages."  17 U.S.C. § 504(a)(1) or (2).  Specifically, Plaintiff may recover under 17 U.S.C. § 504(a)(1)

actual damages suffered . . . as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.  In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

Whereas the amount recoverable as actual damages is unlimited, statutory damages are capped at $ 30,000 for all infringements of any one work.  17 U.S.C. § 504(c)(1). Such statutory damages may be enhanced to a sum of nor more than $ 150,000.  17 U.S.C. § 504(c)(2).

Plaintiffs may not, however, recover separate awards for both its trademark violations and copyright infringement claims but, rather, must elect between the two theories to avoid a double recovery.  *See Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1997) ("A plaintiff seeking compensation for the same injury under different legal theories is of course entitled to only one recovery.").  *See also Computer Assocs. Intern., Inc. v. Altai, Inc.*, 982 F.2d 693, 720 (2d Cir. 1992) (holding that a party "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive").  In the instant case, Plaintiffs seek to recover a damages award for the trademark violations, based only on MuscleTech's

lost profits, and subject to trebling as permitted under 15 U.S.C. § 1117(b) for

Defendants' willful use of counterfeit marks, as well as attorney's fees.  Plaintiffs'

Memorandum at 2, 8-9.

In support of their damages claim, Plaintiffs submit Plaintiffs' Expert Report,

prepared by Parziale, Plaintiffs' expert in forensic accounting, Shire Declaration ¶ 7,

which establishes, based on invoices and packing slips demonstrating the quantity of

counterfeit MuscleTech products Defendants manufactured and distributed.  Plaintiffs

explain that "[t]o be conservative and avoid any possibility of double counting a

particular unit of counterfeit product passing through the hands of more than one

distributor after leaving [Defendant] Sho Me, MuscleTech used only Sho Me's numbers

for determination of the volume (since Sho Me was the source [manufacturer] of the

[counterfeit MuscleTech] products)."  Plaintiffs' Memorandum at 1 (bracketed text

added).  As the sole manufacturer of the counterfeit MuscleTech products, all such

products originated with and were shipped from Sho Me to distributors or retailers.

Plaintiffs' Memorandum at 7.  According to Plaintiffs, the quantity of counterfeit

MuscleTech products was determined based on invoices, shipping records and other

documents produced by Defendants.  *Id*. at 6; Plaintiffs' Expert Report at 5-7.  From

such information, Mr. Parziale calculated Plaintiffs' lost gross profit from Defendants'

sale of the counterfeit MuscleTech products to be $ 1,911,726.71.  Plaintiffs'

Memorandum at 7, 9; Plaintiffs' Expert Report at 9; and Plaintiffs' Reply at 3.

It is well established that where the defendant controls the most satisfactory

evidence of sales of a product that is the subject of a counterfeiting or trademark

infringement action, yet fails or refuses to produce such evidence, the defendant

"leaves his cause exposed to indirect and less definite and certain methods of proof."
*Deering, Milliken & Co., Inc. v. Gilbert*, 269 F.2d 191, 193 (2d Cir. 1959).  "[W]here, as
here, the defendant controls the most satisfactory evidence of sales the plaintiff needs
only establish a basis for a reasoned conclusion as to the extent of the injury caused by
the deliberate and wrongful infringement." *Id*.  (citing cases).  Similar to the instant case,
in *Deering*, *supra*, the defendant was evasive and refused to cooperate with the plaintiff
in ascertaining the true amount of counterfeit products sold, choosing to exercise his
privilege against self-incrimination.  *Id*. at 193.  As such, the plaintiff was "forced to
resort to indirect and circumstantial evidence" to establish the quantity of counterfeit
products sold.  *Id*.

Under the similar circumstances in the instant case, Plaintiffs' indirect and
circumstantial proof of the quantity of counterfeit MuscleTech products Sho Me
manufactured and distributed based on invoices and packing slips provided to Mr.
Parziale provides a sufficient basis for a "reasoned conclusion" as to the amount of
Plaintiffs' lost gross profits attributed to Defendants' sale of counterfeit MuscleTech
products.  *Deering*, *supra*, at 194 (holding that where defendant at trial produced no
evidence as to amount of counterfeit garment linings sold with infringing trademarks, it
was proper for court, on issue of damages, to receive evidence of number of infringing
garment tags printed and number found in defendant's possession upon search, and
deduce that difference represented amount "probably" sold to public which, when
multiplied by minimum royalty otherwise to be paid to the plaintiff, produced correct
damages award).  *See also Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d
966, 973-74 (2d Cir. 1985) (rejecting, on appeal, defendants' assertion that court's

damages award in trademark infringement action was based on insufficient evidence where defendants denied selling any counterfeit items and refused to produce any records, forcing the plaintiff to rely on less certain method, *i.e.*, proving only defendants' sales).

In the instant case, Defendants have not submitted anything contradicting Plaintiffs' Expert Report, yet challenge Parziale's conclusions insofar as the Plaintiffs' Expert Report contains information pertaining to other transactions than the Sho Me invoices and packing slips.  Defendants' Response at 2.  Such objection, however, is irrelevant because although Parziale may have discussed other transactions involving the counterfeit MuscleTech products, Plaintiffs have clarified that they seek damages based only on those invoices and packing slips pertaining to transactions originating with Sho Me as the manufacturer of the counterfeit products.  Plaintiffs' Memorandum at 9; Plaintiffs' Reply at 1-2.

Defendants also challenge the dollar value reflected on the Sho Me invoices Parziale used in certain calculations.  Defendants' Memorandum at 2-4.  Such argument is, however, without any merit given that Plaintiffs do not rely on the prices reflected on the Sho Me invoices but, rather, Plaintiffs rely on the Sho Me invoices to determine only the volume of counterfeit products sold, rather than the dollar value of such sales.  Plaintiffs' Reply at 2.

Defendants further assert that some of the products for which Sho Me generated purchase orders and packing slips might not have actually been sold.  Defendants' Memorandum at 3.  Such assertions, however, are unsupported by any evidence and, as such, are merely conclusory and insufficient to avoid summary judgment.  Fed. R.

13

Civ. P. 56(e); *Goenaga*, *supra*, at 18 (holding once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.).  Moreover, as discussed above, as Defendants were in control of the most satisfactory evidence of sales of the counterfeit MuscleTech products, yet failed to produce such evidence, Plaintiffs were required only to "'establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement.'"  *Louis Vuitton S.A.*, *supra*, at 973 (quoting *Deering*, *supra*, at 193).

As for the balance of Defendants' assertions that some of MuscleTech's products have since been banned by the FDA, that MuscleTech employed false advertising in violation of FTC regulations, and that MuscleTech employed unqualified people in its research laboratory, Defendants' Response at 4-6, without any evidentiary support, such statements are merely conclusory and insufficient to defeat summary judgment.  *Goenaga*, *supra*, at 18.  Moreover, even if Defendants could provide sufficient supporting evidence as to such assertions, they are irrelevant to the court's finding that Defendants are liable on Plaintiffs' First, Second and Third Causes of Action.

Arguing willful infringement, Plaintiffs also seek to treble such lost gross profit, yielding a total damages award of $ 5,735,180.13, and also request attorneys' fees be awarded.  Plaintiffs' Memorandum at 9-10; Plaintiffs' Reply at 5-7.  Defendants do not challenge Plaintiffs' request for treble damages and attorneys' fees which, in the absence of extenuating circumstances, the court is required to award where the subject

14

trademark violation is "willful."  15 U.S.C. § 1117(b).  Here, the record, amply

demonstrates that Defendants willfully violated Plaintiffs' trademark rights by arranging

for the manufacture and distribution of counterfeit MuscleTech products.  Significantly,

Defendants admitted as much on January 23, 2004, by pleading guilty in Federal

District Court in the District of Connecticut to charges of trafficking in counterfeit goods

in violation of 18 U.S.C. § 2320.  Plaintiffs' Exh. C.  A transcript of the plea proceedings

shows that both Defendants admitted their trafficking in counterfeit MuscleTech goods

"was intentional" and that they "knew the marks . . . used were counterfeit."  Plea

Proceedings Transcript, Plaintiffs' Exh. D at 39.  Plaintiffs have thus established that

Defendants "intentionally us[ed] a mark or designation, knowing such mark or

designation is a counterfeit mark . . . in connection with the sale, offering for sale, or

distribution of goods or services," such that Plaintiffs are entitled to treble damages,

absent extenuating circumstances demonstrated by Defendants.  Significantly,

Defendant proffer no extenuating circumstances.  Accordingly, Plaintiffs are entitled to

an award of treble damages and attorneys' fees.

In response to Defendants' assertion, Defendants' Memorandum at 2, that the

amount of damages should be reduced by the $ 210,000 Defendants were ordered to

pay as restitution in connection with their January 23, 2004 guilty pleas to the federal

criminal counterfeiting charges, Plaintiffs maintain that at this time, Plaintiffs seek only a

determination of the gross amount of damages, trebled for willful infringement, in

addition to a finding that Plaintiffs are entitled to an award of attorneys' fees.  Plaintiffs'

Reply at 3.  Plaintiffs maintain that should the instant motion be granted, Defendants

would have an opportunity to seek a set-off in the amount of any restitution paid by

contesting the damages award amount.  Plaintiffs' Reply at 3.

Although the court's research has revealed little published caselaw on point, the Second Circuit has held that whether a restitution payment ordered in connection with a criminal conviction can be deducted as a loss from gross income for income tax purposes for the year in which the restitution was paid depends on whether such restitution payment ultimately serves law enforcement purposes, in which case the payment is not deductible, or whether the payment is for compensation purposes, in which case the deduction is allowed.  *See Stephens v. Commissioner of Internal Revenue*, 905 F.2d 667, 674 (2d Cir. 1990) (holding that because taxpayers' restitution payment ordered in connection with criminal embezzlement conviction was neither a fine nor similar penalty, and was not paid to the government but, rather, to the company from which the funds were embezzled, allowing the payment to be deducted as a set-off from the taxpayers' gross income for the year in which the payment was tendered would not frustrate national or state public policies proscribing certain types of conduct and was intended to compensate the victim).  It logically follows that, in the instant case, as the restitution payment ordered in connection with Defendants' criminal counterfeiting conviction is to be paid to the victims of the crime, *i.e.*, Plaintiffs, 18 U.S.C. §§ 2320(b)(4) and 3663A(c)(1)(A)(ii), such payment is intended to compensate Plaintiffs for their loss, rather than to further law enforcement purposes.  Nevertheless, nothing in the record establishes whether Defendants have, in fact, remitted the restitution ordered.  Thus, until and unless such restitution payment is made, the request to deduct the $ 210,000 payment from the damages ordered in connection with instant civil action is premature and insufficient to defeat summary judgment.

16

## **CONCLUSION**

Based on the foregoing, Plaintiffs' motion for summary judgment (Doc. No. 494) should be GRANTED.  Plaintiffs's request for attorneys' fees should be referred to the undersigned for further proceedings.

Based on Plaintiffs' stated intention not to pursue their remaining Fourth through Ninth Causes of Action against Defendants Obukuro and Mosur, Plaintiffs' Memorandum at 1 n. 2, such claims should, in the interest of judicial economy, be DISMISSED.  Further, insofar as Plaintiffs have advised that they are withdrawing all claims for monetary damages against Defendant Klein, but continue to seek injunctive relief against Klein, Plaintiffs' Memorandum at 1 n. 1, Plaintiffs should be directed to advise the court within thirty (30) days as to whether (1) trial on such claim against Klein should be scheduled, (2) Plaintiffs will seek a consent to final judgment and permanent injunction against Klein, or (3) Plaintiffs will voluntarily dismiss such claim against Klein.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 31, 2007
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

<u>**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**</u> *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       January 31, 2007
             Buffalo, New York